**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO.: 6:08-CV-699-ACC-GJK**

PREMIER JET SERVICES, LLC,

     **Plaintiff,**

vs.

CESSNA AIRCRAFT COMPANY,

     **Defendant.**
_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY MOTION FOR A MORE DEFINITE STATEMENT (Doc. No. 7)** |
| **FILED:** | **June 2, 2008** |

**THEREON** it is **RECOMMENDED** that the motion is **GRANTED IN PART, AND DENIED IN PART**.

On or about April 30, 2008, Plaintiffs Premier Jet Services, LLC. ("Plaintiff") brought this action against Defendant Cessna Aircraft Company ("Defendant") by filing its complaint (the "Complaint"). Doc. No. 1. On June 2, 2008, Defendant filed its Motion to Dismiss or In the Alternative Motion for a More Definite Statement (the "Motion"). Doc. No. 7. On June 23, 2008, Plaintiffs filed their Response to the Motion (the "Response"). Doc. No. 16. On June 25,

2008, the Motion was referred to the undersigned for a ruling, or if necessary, issuance of a report and recommendation.  Doc. No. 17.  The Motion is now before the Court.

## I.      BACKGROUND.

Plaintiff's Complaint alleges that on June 8, 2007, Plaintiff delivered its Cessna Citation III airplane (the "Plane") to Defendant for "routine Phase I through V inspection and servicing." *Id.* at ¶ 7.  Plaintiff alleges that the work was to be completed "in several weeks" and Defendant estimated the cost to be $65,000.  *Id.* at ¶ 8. On June 29, 2007, Defendant discovered a fuel leak and, that same day, Plaintiff authorized repair for that item.  *Id.* at ¶ 7.

On July 3, 2007, Defendant discovered "a double drilled hole in the airframe near the left wing" (the "Hole").  *Id.* at ¶ 2.  Although Plaintiff had delivered the Plane to Plaintiff for service and repair, Plaintiff alleges that from July 3, 2007 forward Defendant seized control of the Plane and grounded it for airworthiness and safety purposes.  *Id.* at ¶ 8.  On or about July 9, 2007, Plaintiff alleges it authorized repair of the Hole.  *Id.* at ¶ 23.  Sometime between July 8th and the 20th, Plaintiff alleges that Defendant projected completion date of July 20th for the work (the "First Completion Estimate").  On July 27th Plaintiff alleges Defendant "insisted" that the Plane be flown to Defendant's headquarters in Witchita, Kansas, for inspection and repair.  *Id.* at ¶ 26. Plaintiff alleges that on July 30th Defendant provided a projected completion date of August 21st (the "Second Completion Estimate").  *Id.* at ¶ 27.  Plaintiff maintains Defendant did not fly the Plane to Wichita until August 10th.  *Id.* at ¶ 28.  On August 17th, Defendant advised Plaintiff that Defendant's engineering team was designing a fix for the Hole.  *Id.* at ¶ 29.  Approximately one week later, Plaintiff alleges Defendant projected a completion date of October 2007 (the "Third Completion Estimate").  *Id.* at ¶ 30.  On October 2, 2007, Plaintiff alleges that Defendant projected a completion date of November 2nd (the "Fourth Completion Estimate").  *Id.* at ¶ 31.

Plaintiff alleges that on October 11th Defendant issued a written engineering report approving the repair originally proposed by Defendant's Orlando facility in July of 2007. *Id.* at ¶ 32. Plaintiff alleges that on October 24th, Defendant discovered that it had incorrectly installed a splice plate in performing the repair for the Hole and that caused further delay. *Id.* ¶ 33. On November 26, 2007, Defendant advised Plaintiff that all repair work had been performed. *Id.* ¶ 34.

Plaintiff further alleges that in the "same time frame," it had discussions with Defendant about changing the engines on the Plane. Plaintiff alleges that as of December 5th, Defendant still refused to accommodate Defendant's "reasonable request" to exchange the engines. *Id.* at ¶¶ 35-36. Plaintiff alleges that not until December 21st did Defendant notify Plaintiff that the repairs were complete and the Plane was airworthy. *Id.* at ¶ 37. Thereafter, Plaintiff alleges that Defendant demanded payment of exorbitant and excessive charges in excess of $403,000.00. *Id.* at ¶ 38. Attached to Plaintiff's Complaint is a single invoice dated November 9, 2007, with a description of labor, parts and service provided. *Id.* at Exhibit "A". That invoice references another much larger invoice, dated September 1, 2007, from Defendant's Orlando facility, which is not attached to the Complaint. Plaintiff alleges that it "demanded an explanation and full details for the billings", but Defendant refused to explain its charges and refused release the Plane. *Id.* at ¶¶ 40-41. Plaintiff generally avers that it has satisfied all conditions precedent to bringing its lawsuit. *Id.* at ¶ 45.

The Complaint contains four counts: Count I alleges breach of contract; Count II alleges conversion; Count III alleges wrongful detention in violation of Florida Statutes § 713.76; and Count IV contains a claim for replevin. *Id.* at ¶¶ 46-70. Notwithstanding earlier allegations that Plaintiff authorized Defendant to repair the Hole, in Count II Plaintiff alleges that it delivered the Plane to Defendant "only for the purpose of servicing it and providing the Phase I through V

repairs." *Id.* at ¶ 58.   From the date the Hole was discovered, Plaintiff alleges Defendant "converted the [Plane] to its own use and purposes".   *Id.* at ¶¶ 59-60.   In regard to Count III, Plaintiff specifically alleges that under Section 713.76(1) it is "entitled to immediate return of the [Plane] upon posting of a bond on the conditions described therein.  *Id.* at ¶ 62.   In Count IV, Plaintiff seeks both return of the Plane and money damages.   Doc. No. 1 at p. 17.

Defendant seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, a more definite statement pursuant to Rule 12(e).   In regard to Count I, Defendant maintains that the Complaint fails to describe the contract at issue, the substance of the contract and fails to attach a copy of same.   Doc. No. 7, pp. 4-5.[1]   In regard to Count II, Defendant maintains that the "Products Liability Economic Loss Rule" mandates dismissal.[2]   Plaintiff argues that the Products Liability Economic Loss Rule bars tort claims against a manufacturer when there is no personal injury or damage to property other than the product itself.   Doc. No. 7, pp. 5-8.  Defendant maintains that in Count II Plaintiff is attempting to bring a negligence claim without naming it as such and because the general theme of the Complaint is that Defendant did a poor job repairing the Plane and took too long, Count II should be dismissed.   *Id.* at at 8. Defendant contends that Count III should be dismissed because Plaintiff has failed to post a bond, which is a condition precedent to maintaining an action under Florida Statutes § 713.76. *Id.* at 9.   Defendant argues that Count IV should be dismissed because it impermissibly seeks both replevin and money damages pursuant to Florida Statutes § 78.01.   Citing *Gregory v. Woodbery*, 53 Fla. 566 (1907), Defendant argues that attorneys' fees are not recoverable as an

---

[1] Defendant acknowledges that the Federal Rules of Civil Procedure do not require that a copy of the contract at issue be attached to the complaint.  Doc. No. 7, at 4-5.  Nevertheless, Plaintiff argues that the Florida Rules of Civil Procedure require same and should be persuasive.  *Id.*

[2] Plaintiff maintains that the Products Liability Economic Loss Rule precludes a plaintiff from suing a product manufacturer in tort when there is no personal injury or damage alleged to property other than the product itself. Plaintiff cites *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868 (1986) and *Florida Power & Light (FPL) v. Westinghouse Electric Corp.*, 510 So.2d 899 (Fla. 1987) as support for its argument.  *Id.* at 7-8.

element of damages in an action for replevin and because the prayer for relief in Count IV seeks recovery of attorneys' fees "the Count should be dismissed and correctly repled." *Id*. at 10. Finally, Defendant maintains that Count IV is also "unnecessary" because if Plaintiff posts the bond required under Florida Statutes § 713.76 the Plane will be returned.

In its Response, Defendant maintains that with the exception of the argument that Count III requires the posting of a bond and the request for elimination of the claim for attorneys' fees in Count IV short shrift should be given to the Motion. Doc. No. 16, p. 2. In regard to Count I, Plaintiff maintains it adequately pleads an oral contract, breach of that contract and damages flowing from the breach. Doc. No. 16, pp. 4-5. Plaintiff maintains the invoice from Defendant is evidence of a contract and further argues that Defendant erroneously attempts to apply a heightened pleading standard to Plaintiff's Complaint. Doc. No. 16, pp. 6-7. In regard to Count II, Plaintiff maintains that Defendant's attempt to invoke the Products Liability Economic Loss Rule is an admission that the parties are in contractual privity, which undermines Defendant's attempt to obtain dismissal of Count I. Doc. No. 16, p. 6. Plaintiff maintains it has adequately alleged conversion as a result of Defendant's temporary taking of the Plane for its own use and purposes. Doc. No. 16, p. 6-7. Plaintiff cites *Burke v. Napieracz*, 674 So.2d 756 (Fla. 1st DCA 1996) for the proposition that when a plaintiff alleges conduct constituting an affirmative act of conversion rather than a mere failure to perform contractual obligations a claim for conversion is viable. *Id.* at 758. Plaintiff also argues that the Economic Loss Rule does not apply to Count II because that claim does not allege a negligence claim, but rather an independent intentional tort. Doc. No. 16, p. 8. In regard to Count III, Plaintiff acknowledges that a claim for wrongful detention requires posting a bond. *Id*. at 10. However, Plaintiff offers two excuses for failing to do so: 1) doubt about the amount Defendant is seeking; and 2) privileged settlement discussions.

*Id*. Plaintiff then asks Defendant to identify the amount it is claiming "if other than the $403,797.04" reflected in the invoice attached to Plaintiff's Complaint.  Defendant has not sought an opportunity to file a reply to address this issue and has not filed anything advising otherwise.  In regard to Count IV, Plaintiff cites the language of Florida Statutes §78.01 itself and several cases for the proposition that in a replevin action the plaintiff may also recover damages caused by the taking and detention of the property at issue.  *Id*. at 11.  In regard to Defendant's argument that Count IV should be dismissed because it contains a claim for attorneys' fees, Plaintiff simply states that "this court should, at most, strike the request for attorney's fees, without prejudice, until discovery is completed."  *Id*. at 12.  The Motion is now before the Court.

## II.      STANDARD OF REVIEW.

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff.  *Erickson v. Pardus*, 127 S.Ct. 2197 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  To satisfy the Rule 8 pleading requirements, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *See also Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id.* at

1965.  Plaintiff must plead enough facts to state a plausible, and not merely conceivable, basis for the claim.  *Id.*

Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of a plaintiff's complaint, there remains a dispositive legal issue which precludes relief.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

###  III.    ANALYSIS.

###  A.    <u>Count I.</u>

Count I of the Complaint asserts a claim for breach of contract.  The elements of such a claim are: 1) a valid contract; 2) a material breach; and 3) damages.  *J.J. Gumbrg Co. v. Janis Services, Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003).

Plaintiff alleges it delivered the Plane to Defendant for routine Phase I through V inspection and servicing.  It is further alleged that the work was to be completed "in several weeks" and Defendant estimated the cost to be "approximately $65,000."  *Id.* ¶ 7.  On June 29, 2007, Plaintiff alleges that the scope of work was amended to include repair of a fuel leak.  *Id.*  It is apparent from the Complaint that the anticipated work became anything but routine shortly after the Hole in the airframe was discovered.

Plaintiff alleges the Hole was discovered on July 3, 2007, and Plaintiff alleges that day Defendant grounded the Plane due to airworthiness and safety concerns.  *Id.* at ¶ 23.   On or before July 9, 2007, Plaintiff alleges it authorized another change the scope of work to include repair of the Hole.  *Id.* at ¶¶ 23-4.  Plaintiff further alleges on July 3, 2007, Defendant "took control" of the Plane for its "own benefit and purposes to conduct a thorough and extensive review and analysis of the cause of the Hole for its own purposes...."  *Id.* at ¶ 50.  Plaintiff

alleges that Defendant insisted that the Plane be taken to Defendant's headquarters in Wichita. *Id.* at ¶ 27.   Plaintiff alleges Defendant required input and/or approval from the Wichita engineering and management team in regard to the proposed repair for the Hole.  *Id.* at ¶¶ 8, 26, 29, 32.  Plaintiff alleges the Wichita engineering team did not approve the method of repair for the Hole until October 11, 2007. *Id.* at ¶ 32.   Plaintiff claims Defendant refused to return the Plane until it completed "its own analysis and use of the [Plane] for its own purposes." *Id.* at ¶ 51.   Plaintiff maintains Defendant also acted in bad faith in refusing to further amend the scope of work to include an exchange the engines for the Plane.  *Id.* at ¶ 52.   Furthermore, Plaintiff claims Defendant wrongfully attempted to impose exorbitant charges for its Phase I through V work on the Plane, refused to substantiate its charges and refused to return the Plane to Plaintiff. *Id.* at ¶¶ 52-55.  Finally, Plaintiff alleges that a result of Defendant's breach of contract Plaintiff has been damaged.

The requirements for pleading a cause of action are low.  A complaint need only  contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964.  The Complaint alleges an oral agreement wherein Defendant agreed to act reasonably in regard to addressing requests to amend the scope of work, the timely performance of the work, imposing charges for the work and substantiating those charges. Plaintiff claims Defendant breached each of those obligations.   The Complaint provides Defendant fair notice of Plaintiff's claim and the basis for that claim.   Therefore, it is recommended that the Motion be DENIED as to Count I.

B. **Count II.**

Count II asserts a claim for conversion.  Defendant maintains that Count II is barred by the Products Liability Economic Loss Rule because the Plaintiff fails to allege damage to anything other than the product itself – the Plane.  Doc. No. 7, 5-8.  Plaintiff maintains that it has alleged an independent tort of conversion.  Doc. No. 16 at 6-9.  Plaintiff argues that the mere existence of a contractual relationship and, therefore implicitly, the mere existence of a manufacturer-consumer relationship, does not preclude a claim for conversion where the complaint alleges an affirmative and intentional act of conversion.  Plaintiff cites *Duncan v. Kasim, Inc.*, 810 So.2d 968, 971 (Fla. 5th DCA 2002) and *Burke v. Napieracz*, 674 So.2d 756, 758 (Fla. 1st DCA 1996) as support for its position.

Plaintiff is correct that the Economic Loss Rule does not bar a claim for conversion when the complaint alleges an independent affirmative act of conversion.  Although Plaintiff voluntarily delivered its Plane to Defendant for repairs Plaintiff specifically alleges that Defendant thereafter took control of the Plane "for its own use and purposes from July 3, 2007 through November 26, 2007, to the detriment and in direct contravention of the rights and interests of [Plaintiff} in the [Plane], depriving [Plaintiff] of the use and benefit of the [Plane] from July 3, 2007 through December 20, 2007."  Doc. No. 1, ¶ 59.  Plaintiff further alleges that "under the cloak of having a possessory lien right" Defendant refused to return the Plane.  *Id.* at 69.  These allegations of ultimate fact, although somewhat conclusory, must be taken as true at this stage.  As such, it is recommended that the Motion be denied as to Count II of Plaintiff's Complaint.

### C.  Count III.

Count III asserts a claim for wrongful detention under Florida Statutes § 713.76.

Section 713.76 addresses release of liens and states:

> (1) Any lienee may release his or her property from any lien claimed thereon under this part by filing with the clerk of the circuit court a cash or surety bond, payable to the person claiming the lien, in the amount of the final bill, and conditioned for the payment of any judgment which may be recovered on said lien, with costs.

> (2) Whenever a lienee brings an action in the appropriate court with respect to any property which has been wrongfully detained by a lienor in violation of this section, the lienee, upon a judgment in the lienee's favor, shall be entitled to damages, reasonable court costs, and attorney's fees sustained by the lienee by reason of such wrongful detention.

> (3) Any lienor who, upon the posting of the bond, fails to release or return the property to the lienee pursuant to this section is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. §713.76 (emphasis added).   Plaintiff concedes that posting a bond is a condition precedent to maintaining an action under Section 713.76. Doc. No. 16 at 10.  Although Plaintiff's complaint alleges that all conditions precedent to bringing the action have been satisfied or waived (Doc. No. 1 at ¶45), Plaintiff also concedes that no such bond has been posted.  Doc. No. 16 at 10.

Plaintiff offers two excuses for not posting a bond.  The first is that although Defendant initially demanded $403,797.04 for its work the Plaintiff has allegedly conceded that "some portion" of that is too high.  The second excuse is based on privileged settlement discussions. The fact is that Count III requires the posting of a bond and no bond has been posted.  The explanations provided are outside the pleadings.  Therefore, it is recommended that the Motion be GRANTED as to Count III of the Complaint.

### D.  Count IV.

Count IV asserts a claim for replevin under Florida Statutes §78.01.   In Count IV, Plaintiff seeks return of the Plane, money damages and attorneys' fees.  Doc. No. 1 at 17. Defendant maintains that Plaintiff is not entitled to replevin and money damages because that would constitute a double recovery.  Doc. No. 7 at 10.  In addition, Defendant argues attorneys' fees are not recoverable in a replevin action.   Finally, Defendant argues that Count IV is "unnecessary" because it has offered to return the Plane upon posting of the bond required by Section 713.76.

Florida Statutes §78.01 states:

> Any person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property <u>and any damages sustained by reason of the wrongful taking or detention</u> as herein provided. Notice of lis pendens to charge third persons with knowledge of plaintiff's claim on the property may be recorded.

Fla. Stat.  §78.01 (emphasis added).  Thus, the plain language of Section 78.01 provides a right to recovery of the property at issue and compensatory damages for the wrongful taking or detention of the property at issue.   See also, *Foresight Enterprises, Inc. v. Leisure Time Properties, Inc.*, 466 So.2d 283, 286 (Fla. 5th DCA 19830("It is well established in Florida that in a statutory replevin suit, a party may recover not only the object sought to be replevied, but also damages for the loss of its use.").

In regard to Plaintiff's claim for attorneys' fees, it is equally clear that there is no right to recover attorneys' fees in an action under Section 78.01.  Defendant cites *Gregory v. Woodbery*, 43 So. 504 (Fla. 1907) as authority for the proposition that attorneys' fees are not recoverable in a replevin action.   Defendant maintains that Count IV of Plaintiff's Complaint is subject to

dismissal because it seeks recovery not provided for under Section 78.01.  Citing the *Gregory* case, the Plaintiff maintains that the correct action for the Court to take would be to strike the claim for attorneys' fees from Count IV of the Complaint.    The Court agrees.  Therefore, it is recommended that the Motion be GRANTED IN PART AND DENIED IN PART as to Count IV and that claim for attorneys' fees be stricken.[3]

## IV.  CONCLUSION.

For the foregoing reasons, it is recommended that the Motion be **GRANTED** as to Count III of the Complaint and that the claim for attorneys' fees be stricken from Count IV.  The Motion should be otherwise **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant's argument that Count IV of the Complaint is unnecessary because posting a bond would moot the claim for replevin is rejected.  No bond has been posted.  Therefore, the claim is not moot.